| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| AGOP G. ARAKELIAN, SBN 186467<br>KIMBALL, TIREY & ST. JOHN, LLP<br>555 S. Flower Street, #3400<br>Los Angeles, CA 90071<br><br>213-337-0050<br>213-337-0080 (fax)<br><br>☐ *Individual appearing without counsel*<br>☒ *Attorney for:* Movant | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re: Robert J. Cipriani aka R.J. Cipriani | CHAPTER: 7 |
|---|---|
| | CASE NO.: 2:12-bk-44758-TD |
| | DATE: November 14, 2012<br>TIME: 10:00 a.m.<br>CTRM: 1345<br>FLOOR: 13th |
| Debtor(s). | |

## NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER
### 11 U.S.C. § 362(l) (with supporting declarations)
### (MOVANT: Irvine Apartment Communities, L.P.    )
### (Unlawful Detainer)

1. NOTICE IS HEREBY GIVEN to the Debtor(s), Debtor's(s') attorney, and other interested parties ("Responding Party") that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay or for an order confirming that the automatic stay does not apply as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

    ☒ NOTICE IS ALSO GIVEN to the Trustee as an additional Responding Party, ~~because the Motion relates to a nonresidential property~~

2. Hearing Location: ☒ **255 East Temple Street, Los Angeles**    ☐ **411 West Fourth Street, Santa Ana**
    ☐ **21041 Burbank Boulevard, Woodland Hills**    ☐ **1415 State Street, Santa Barbara**
    ☐ **3420 Twelfth Street, Riverside**

3. a. ☐ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of the Motion.

    b. ☒ This Motion is being heard on SHORTENED TIME. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence must be filed and served:

    ☒ at the hearing    ☐ at least _____ court days before the hearing.

    (1) ☒ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

    (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

    (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**F 4001-1M.UD**
F4001MUD

Motion for Relief from Stay (Unlawful Detainer) - *Page 2 of* ____    **F 4001-1M.UD**

| In re                     (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| Robert J. Cipriani aka R.J. Cipriani | |
| Debtor(s). | CASE NO.: 2:12-bk-44758-TD |

4.  You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response *(Optional Court Form F 4001-1M.RES)*, or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1.

5.  If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated:  10/30/12

KIMBALL, TIREY & ST. JOHN, LLP
*Print Law Firm Name (if applicable)*

AGOP G. ARAKELIAN, SBN 186467
*Print Name of Individual Movant or Attorney for Movant*

*Signature of Individual Movant or Attorney for Movant*

---

December 2009                                                    **F 4001-1M.UD**

**F 4001-1M.UD**

| In re | (SHORT TITLE) | CHAPTER: | 7 |
|---|---|---|---|
| Robert J. Cipriani aka R.J. Cipriani | | | |
| | Debtor(s). | CASE NO.: | 2:12-bk-44758-TD |

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
## (Unlawful Detainer)

(**MOVANT:** Irvine Apartment Communities, L.P.      )

1. **The Property at Issue:** Movant moves for relief from the automatic stay to obtain possession of the residential or nonresidential premises at the following address (the "Property"):

   *Street Address:*  1221 Ocean Avenue
   *Apartment/Suite No.:*  #408
   *City, State, Zip Code:*  Santa Monica, CA  90401

   **The Property is:** [ X ] Residential      [ ] Nonresidential

2. **Case History:**

   a. [ X ] A voluntary  [ ] An involuntary  petition under Chapter  [ x ] 7  [ ] 11  [ ] 12  [ ] 13
      was filed on *(specify date):* 10/16/12

   b. [ ] An Order of Conversion to Chapter  [ ] 7  [ ] 11  [ ] 12  [ ] 13
      was entered on *(specify date):*

   c. [ ] Plan was confirmed on *(specify date):*

   d. [ ] Other bankruptcy cases of the Debtor were pending within the year ending on the petition date. See attached Declaration.

   e. [ ] Other bankruptcy cases affecting this Property have been pending within the two years ending on the petition date. See attached Declaration.

3. **Grounds for Relief from Stay:** *(Check all that apply)*

   a. [ X ] Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of petition date, Debtor(s) had no right to continued occupancy of the premises, as follows:

      (1) [ ] An unlawful detainer judgment in favor of Movant was entered prepetition.

         A. [ ] The debtor has not filed with the petition and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

         B. [ ] The debtor or adult dependent of debtor has not deposited with the Clerk any rent that would become due during the 30-day period after the filing of the petition.

         C. [ ] The debtor or adult dependent of debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

         D. [ ] The Movant has filed and served an objection to the certification referenced in (a)(1)(A) and/or (a)(1)(C) above. A copy of the objection is attached hereto as Exhibit_____. A hearing on this objection is set for: _____.

      (2) [ X ] An unlawful detainer proceeding was commenced prepetition.

      (3) [ ] Movant acquired title to the premises by foreclosure sale prepetition and recorded the deed within the period provided by state law for perfection.

      (4) [ ] Movant acquired title to the premises by foreclosure sale postpetition and recorded the deed within the period provided by state law for perfection.

      (5) [ ] The lease or other right of occupancy expired by its terms prepetition.

      (6) [ ] The lease has been rejected or deemed rejected by operation of law.

      (7) [ X ] Lease payments have not been made since the filing of the petition.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.UD**

Motion for Relief from Stay (Unlawful Detainer) - *Page 4 of* ____

**F 4001-1M.UD**

| In re (SHORT TITLE) Robert J. Cipriani aka R.J. Cipriani | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NO.: 2:12-bk-44758-TD |

(8) [ ] An eviction action has been filed to obtain possession of the subject residential property on grounds of endangerment of the property **or** because of illegal use of controlled substances on the property and Movant has filed and served upon Debtor a certification that [ ] such an action was filed or [ ] that within the 30 days preceding the certification Debtor has endangered the subject property or illegally allowed the use of controlled substances on the property. A copy of Movant's certification is attached as Exhibit_____. Debtor [ ] has [ ] has not filed an objection to Movant's certification. A copy of Debtor's objection, if any, is attached as Exhibit_____. A hearing on this objection is set for: _____.

b. [X] Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. [ ] The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

   (1) [ ] Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

   (2) [ ] Other bankruptcy cases have been filed asserting an interest in the same property.

   (3) [ ] The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents. No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

**4. Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*

a. [X] Movant submits the attached Unlawful Detainer Declaration to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

b. [ ] Other Declaration(s) are also attached in support of this Motion.

**WHEREFORE, Movant prays that this Court issue an Order granting the following** *(specify forms of relief requested)*:

1. [X] Termination of the stay to allow Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to obtain possession of the Property.

2. [ ] Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as set forth in the attached Declaration(s).

3. [ ] An order confirming that the automatic stay does not apply.

4. [ ] Alternatively, if immediate relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable:

   a. Establishment of a deadline for assumption or rejection of the lease.

   b. Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*

**F 4001-1M.UD**

**F 4001-1M.UD**

| In re              (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| Robert J. Cipriani aka R.J. Cipriani | |
| Debtor(s). | CASE NO.: 2:12-bk-44758-TD |

5. Additional provisions requested:

a. [X] That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

b. [___] Termination or modification of the Co-debtor Stay of 11 U.S.C. § 1201 or § 1301 as to the above-named co-debtor, on the same terms and conditions.

c. [X] That the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived.

d. [___] That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER).*

e. [___] For other relief requested, see attached continuation page.

Dated: 10/30/12

Respectfully submitted,

Irvine Apartment Communities, L.P.
*Movant Name*

KIMBALL, TIREY & ST. JOHN, LLP
*Firm Name of Attorney for Movant (if applicable)*

By: _____
*Signature*

Name: AGOP G. ARAKELIAN, SBN 186467
*Typed Name of Individual Movant or Attorney for Movant*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                           **F 4001-1M.UD**

| Motion for Relief from Stay (Unlawful Detainer) - *Page 6 of* ____ | **F 4001-1M.UD** | |
|---|---|---|
| In re (SHORT TITLE) Robert J. Cipriani aka R.J. Cipriani | CHAPTER: 7 | |
| Debtor(s). | CASE NO.: 2:12-bk-44758-TD | |

## UNLAWFUL DETAINER DECLARATION
### (MOVANT: Irvine Apartment Communities, L.P. )

I, *Stephanie Van de Motter* , declare as follows:
*(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the residential or nonresidental real property that is the subject of this Motion ("Property") because:

   ☐ I am the Movant and owner of the Property.

   ☒ I manage the Property as the authorized agent for the Movant.

   ☐ I am employed by Movant as *(state title and capacity)*:

   ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. The address of the Property that is the subject of this Motion is:

   Street Address:        1221 Ocean Avenue
   Apartment/Suite No.:   #408
   City, State, Zip Code: Santa Monica, CA  90401

4. Movant is the legal owner of the Property, or the owner's legally authorized agent. A true and correct copy of the Trustee's Deed upon Sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit __A__. A true and correct copy of any applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5. The Property is: ☒ residential property  ☐ nonresidential property
   a. Debtor(s) occupies the Property

   ☒ on a month-to-month tenancy          ☐ pursuant to a lease that is in default

   ☐ after a foreclosure sale on: _____          ☐ other *(specify)*:

   b. ☒ Debtor(s) has/have failed to pay the monthly rent of $6,232.00 since the following date *(specify date)*: 8/1/12

   c. ☐ In addition, Debtor(s) has/have failed to pay other obligations under the lease, including the following (*See attached continuation page for itemization*):

   (1) ☐ Common area maintenance charges

   (2) ☐ Property taxes

   (3) ☐ For additional obligations, see attached continuation page.

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                          **F 4001-1M.UD**

Motion for Relief from Stay (Unlawful Detainer) - *Page 7 of* ____  **F 4001-1M.UD**

| In re | (SHORT TITLE) | CHAPTER: 7 |
|---|---|---|
| Robert J. Cipriani aka R.J. Cipriani | Debtor(s). | CASE NO.: 2:12-bk-44758-TD |

6. Debtor's(s') bankruptcy petition in this case was filed on *(specify date):*  10/16/12

7. Procedural status *(indicate all that apply, and provide dates for completed steps):*

    a. [X] Movant caused a Notice to Quit to be served upon the Debtor(s) on *(specify date):*  8/7/12
        A true and correct copy of which is attached hereto as Exhibit ___B___

    b. [X] Before the filing of the petition, Movant had commenced an unlawful detainer proceeding in state court and completed the following:

        (1) [X] Movant filed a Complaint for Unlawful Detainer against the Debtor(s) on *(specify date):* 8/16/12 , a true and correct copy of which is attached as Exhibit __C___ .

        (2) [X] Trial was held on *(specify date):*  set for 10/17/12 but continued to 11/28/12 due to the filing of this Debtor's Bankruptcy Petition.

        (3) [ ] An Unlawful Detainer Judgment against the Debtor(s) was entered on the Complaint for Unlawful Detainer on *(specify date):* _____, a true and correct copy of which is attached as Exhibit_____ .

        (4) [ ] A Writ of Possession for the Property was issued by the state court on *(specify date):*_____ , a true and correct copy of which is attached as Exhibit _____ .

        (5) [X] The Debtor has not filed with the petition and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

        (6) [X] The Debtor or adult dependent of Debtor has not deposited with the Clerk any rent that would become due during the 30-day period after the filing of the petition.

        (7) [X] The debtor or adult dependent of debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

        (8) [ ] Movant has filed and served an objection to Debtor's certification referenced in paragraph (5) and/or (7) above, a copy of which is attached hereto as Exhibit_____ . A hearing on this objection is set for:_____ .

        (9) [ ] An eviction action has been filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that ___ such action was filed or ___ that Debtor has endangered the subject property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property. A copy of Movant's certification is attached hereto as Exhibit_____ . Debtor ___ has [ ] has not filed an objection to Movant's certification. A copy of Debtor's objection, if filed, is attached hereto as Exhibit_____ . A hearing on this objection is set for: _____ .

    c. [ ] The lease was rejected on_____ *(date):*

        (1) [ ] by operation of law.

        (2) [ ] by Order of the Court.

    d. [ ] The regular lease payments have not been made since the filing of the petition.

8. [X] Debtor(s) has/have no equity in the Property because Debtor(s) does/do not have a lease interest that could be assumed or assigned under 11 U.S.C. § 365.

9. [X] The Property is not necessary to an effective reorganization because *(specify):*

    a. [X] The Property is residential and is not producing income for the Debtor(s).

    b. [ ] The Property is commercial, but no reorganization is reasonably in prospect.

    c. [ ] Other *(specify):*

*(Continued on next page)*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*  **F 4001-1M.UD**

Motion for Relief from Stay (Unlawful Detainer) - *Page 8 of* _____    **F 4001-1M.UD**

| In re                                          (SHORT TITLE) Robert J. Cipriani aka R.J. Cipriani | CHAPTER:  7 |
|---|---|
| Debtor(s). | CASE NO.: 2:12-bk-44758-TD |

10. ____ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

    a. ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.

    b. ☐ Other bankruptcy cases have been filed asserting an interest in the same property.

    c. ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents. No Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) has been filed.

    d. ☐ Other *(specify)*:

11. ☐ Other bankruptcy cases that have prevented Movant from recovering possession of this Property include the following:

    a. Case Name:
        Case Number:                                    Chapter:
        Date Filed:                                        Date Dismissed:
        Relief from stay re this Property    ☐ was    ☐ was not  granted.

    b. Case Name:
        Case Number:                                    Chapter:
        Date Filed:                                        Date Dismissed:
        Relief from stay re this Property    ☐ was    ☐ was not  granted.

    c. ☐ See attached continuation page for more information about other cases.

12. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the actions set forth in paragraph 7 that were taken after the filing of the bankruptcy petition in this case.

    a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 11 above.

    c. ☐ For other facts justifying annulment, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** 10/30/12 **,2012, at** Santa Monica **(city, state).**

Stephanie VanSchaik                                          [Signature]
*Print Declarant's Name*                                    *Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**Page** _9_ **of** _____

# EXHIBIT A

## AMENDMENT & RENEWAL OF LEASE

The undersigned and The Irvine Company LLC are "**Resident**" and "**Landlord**," respectively, under that certain lease dated as of the 1st day of August 2009 (the "**Original Lease**"), for the apartment located at 1221 Ocean Avenue, 408 Santa Monica, CA 90401 (the "**Premises**"). Resident and Landlord hereby enter this Amendment and Renewal of Lease (the "**Amendment**") effective as of the Commencement Date specified in Section 1.B below, on the terms and conditions contained herein. The Original Lease as amended by this Amendment is hereinafter referred to as the "**Renewed Lease.**"

1. **Definitions**. The definitions of the below terms contained in the Original Lease are hereby amended as provided below for purposes of the Renewed Lease:

A. Reserved Parking Space/Garage: Space No.: _____   Garage No.: _____

No. of Vehicles: 2   License Plate No.: _____

B. Term: Commences on the 1st day of August 2009 and ends on the

31st day of July 2010 at 11:59 p.m.

C. Rent: Six Thousand Forty Three ($6,043.00) per month

D. Rent Due Date: The FIRST (1ST) day of each calendar month.

E. Security Deposit: Five Hundred   $ 500.00

F. Occupants:

| Name | Date of Birth |
|------|---------------|
| Martin C. Yacoobian | n/a |
| | |
| | |
| | |
| | |
| | |

G. Pets: None

H. Authorized Manager of Community: Stephanie Van de Motter

Address/Phone: 1221 Ocean Avenue, Santa Monica, CA 90401  310.255.1221

Except for the changes above or as otherwise defined in this Amendment, all definitions in the Original Lease shall remain the same for the Renewed Lease.

2. **Lease Break Addendum**. [*Check applicable box*]

[ X ] Not Applicable
[  ] The Lease Break Addendum attached as Exhibit B to the Original Lease is hereby terminated in its entirety and Resident has elected not to enter a Lease Break Addendum for the Renewed Lease.
[  ] The Lease Break Addendum attached as Exhibit B to the Original Lease shall remain in effect during the term of the Renewed Lease, except that the Lease Break Fee in Section 2.b of the Lease Break Addendum is changed to $ _____ .
[  ] The Lease Break Fee under the Lease Break Addendum attached as Exhibit B is $_____.

3. **Concession Addendum**. The Concession Addendum attached to the Original Lease is hereby terminated and is of no further force or effect.

4. **No Other Changes**. Except as provided herein or in any attachments to this Amendment, the terms and provisions of the Original Lease shall remain in effect and apply for all purposes to the Renewed Lease being entered pursuant to this Amendment.

**RESIDENT:**

NAME: _____   DATE 5-13-09
    Martin C. Yacoobian

NAME: _____   DATE _____

NAME: _____   DATE _____

NAME: _____   DATE _____

NAME: _____   DATE _____

NAME: _____   DATE _____

NAME: _____   DATE _____

**LANDLORD:**

The Irvine Company LLC, a Delaware limited liability company

By: The Irvine Company Apartment Communities, Inc.,
    a Delaware corporation, its duly authorized agent

Name: Stephanie Van de Motter

Title: Manager

10.28.08
1221 Ocean Ave Group A - IAC Lease Renewal 3.28.06.doc

EXHIBIT A

# LEASE

THIS LEASE IS MADE AS OF THIS   day of   , by and between Irvine Apartment Communities, L.P., hereinafter "Landlord"), and Martin C. Yacoobian, III, _____, (hereinafter "Resident."  If more than one, each shall be jointly and severally liable and are all collectively referred to as "Resident" herein).

**1.  Definitions:**

A.  Community:  1221 Ocean Avenue

B.  Premises: Apartment number   1221 Ocean Avenue, # 408, Santa Monica CA  90401
   Street Address                City, State, Zip

C.  Reserved Parking Space(s):  Space No(s).:  Designated
   No. of Vehicles: 1        License Plate No.:

D.  Term: Commences on the   1st June day of       2002     and ends on the
   31st May day of       2003     at 11:59 p.m.

E.  Rent:   Five Thousand Six Hundred       ($5,600.00) per month

F.  Rent Due Date: The   FIRST (1ST) day of each   calendar month.

G.  Security Deposit:   Five Thousand Three Hundred   ($5,300.00)

H.  Occupants:   Name           Date of Birth

I.  Pets:   None

J.  Authorized Manager of Community:   Stephanie Van de Motter
   Address/Office Phone:   1221 Ocean Avenue, Management Office, Santa Monica CA 90401   (310) 255-1221

K.  Landlord's Rules & Regulations:   Revision Date:  12/01  (See Exhibit "A")

**2.**  **Premises:** The Premises leased to Resident consist of a residential unit together with any appliances, window coverings, carpet and other furnishings listed on the move-in form, and the Valet Parking Space(s) referenced in Section I.C above. Resident shall comply with the Parking Rules contained in the Rules and Regulations attached hereto as Exhibit "A." Use of the Parking Space for anything other than as specified in the Rules and Regulations is prohibited.

**3.**  **Term:** Landlord makes no representation that the Premises will be ready for occupancy on the commencement date of the Term. If Landlord is unable to deliver possession of the Premises at the commencement of the Term, Landlord shall not be liable for damages to Resident, but Resident shall not be responsible for payment of Rent for the period between the commencement of the Term and the time when Landlord delivers possession. If Landlord is not able to deliver possession within thirty (30) days of the commencement date of the Term, either Landlord or Resident may, prior to the time when Landlord delivers possession, cancel this Lease by giving written notice to the other.

**4.**  **Rent:** Resident shall pay Landlord the Rent for the Premises each month in advance on or before Rent Due Date.  If Resident moves in on the first day of the month, Resident shall pay Rent for the first month in the amount shown in Section I.E on the move-in date. If Resident moves in on any day other than the first day of the month, Resident shall pay the initial Rent payment as follows:

a.  Move in after the 1st and before the 25th.  If Resident moves in after the 1st day of the month and prior to the 25th of the month, then Resident shall make an initial Rent payment on the move-in date in a prorated amount for the remaining days of the move-in month.  For example, if Resident moves in on the 3rd day of September, then Resident shall pay Rent upon move-in in an amount equal to 28/30 times the amount shown in Section I.E above.  In this example, the Resident's second Rent payment shall be made on October 1 in the full amount shown in Section I.E.

b.  Move-in on or after the 25th.  If Resident moves in on the 25th or later day of the month, then Resident shall make an initial Rent payment equal to the sum of (i) a prorated portion of the remaining days of the month, PLUS (ii) the full amount of the next month's Rent.  For example, if Resident moves in on October 27, the initial Rent payment shall be the total of (i) 4/31 times the amount shown in Section I.E, plus (ii) the full November Rent in the amount shown in Section I.E.  In this example, the Resident's second Rent payment shall be made on December 1 in the full amount shown in Section I.E.

All provisions of this Lease shall be in full force and effect commencing on the move-in date or the date specified in Section I.D above, whichever occurs first.  The Term of the Lease as stated in Section I.D shall not be affected by the move-in date.

**5.**  **Where Payments Are To Be Made:** Rent and all other charges due Landlord hereunder shall be payable by cashier's check, personal check or money order made payable to "Irvine Apartment Communities."  Payment should be delivered or mailed to the Business Office address listed in Section I.J above, or at such other place or in such other manner as Landlord may from time to time designate. Resident shall remit one check or money order for the Rent payable for the Premises, and shall write Resident's apartment number on the check or money order.  Cash rental payments will not be accepted.  Unless otherwise posted, normal business hours for the Business Office are 9:00 AM to 6:00 PM, Monday through Saturday.

Rev. 3/02                    Initials: _____

6.  **Late Charge; Failure to Pay and Reporting to Credit Agencies:** Resident acknowledges that if Resident pays Rent after the due date, Landlord will incur costs not contemplated by this Lease, the exact amount of such costs being extremely difficult and impracticable to determine. Such costs include, without limitation, processing and accounting charges. Therefore, if any installment of Rent due from Resident is not received by Landlord within 3 days after the Rent Due Date (that is, by the close of business on the 3rd of each month), Resident shall pay to Landlord an additional sum of $50.00 as a late charge. The parties agree that this late charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of late payment by Resident. Landlord's acceptance of Resident's payment of any late charge shall not constitute a waiver by Landlord of Resident's default with respect to the overdue amount, nor prevent Landlord from exercising any other rights and remedies available to Landlord. As required by law, Resident is hereby notified that a negative credit report reflecting on Resident's credit record may be submitted to a credit reporting agency if Resident fails to pay rent or other amounts owing under this Lease on time.

7.  **Returned Check Fee:** If Resident's personal check for Rent is not honored or is returned by Resident's financial institution for non-sufficient funds (a "NSF Check"), Landlord will treat this situation as if Resident has not paid Rent for that month. Resident shall be obligated to pay Landlord a fee of Twenty-five Dollars ($25.00) for any NSF Check. The $25.00 NSF Check fee, when added to the Fifty Dollar ($50.00) late charge for failure to pay Rent by the due date, will result in a total of Seventy-five Dollars ($75.00) payable by Resident in addition to the delinquent month's Rent. Resident shall replace any NSF Check with a cashier's check or money order only. After receipt of two (2) NSF Checks, Landlord shall thereafter accept only a cashier's check or money order for payment of Rent from Resident during the term or any extension of the Lease.

8.  **Security Deposit:** At the time Resident signs this Lease, Resident shall also pay Landlord a Security Deposit as security for the faithful performance of Resident's obligations under this Lease. If Resident has a pet, the Security Deposit is $1,000 per pet more than the standard Security Deposit charged to Residents without pets. Landlord may, at its option, deduct from the Security Deposit such amounts as are reasonably necessary to remedy Resident's defaults in the payment of Rent, utility charges or any other item for which Resident is responsible under the Lease, to repair damage (other than ordinary wear and tear) to the Premises caused by Resident and/or members of Resident's family, guests, licensees, visitors or pets, including but not limited to stains in carpet, counter damage, drywall repair, painting, drapes and plumbing system, or to clean the Premises upon termination of the tenancy. In the event that, at the termination of the tenancy, the amount of the Security Deposit is insufficient to cover the cost of repairing damage, cleaning the Premises or any other matter referenced in the preceding sentence, Resident shall be obligated to reimburse Landlord for the amount of such insufficiency within three (3) weeks after receipt of notice from Landlord specifying the amount of the insufficiency and the reason for the charge. (This obligation to reimburse Landlord for the amount of any such insufficiency shall survive termination of the tenancy.) In the event Landlord uses any part of the Security Deposit during the tenancy, Resident shall restore the Security Deposit to its full amount within ten (10) days after Landlord's written notice to Resident of the deduction and Landlord's demand that the Security Deposit be restored in full. Resident's failure to do so shall be a material default under this Lease. Upon receipt of notice that the unit is vacated, Landlord shall provide Resident, within three (3) weeks of Resident's vacation of the Premises, an itemized written statement of the basis for and the amount of the Security Deposit received and the disposition of the Security Deposit, and return any remaining portion of the Security Deposit to Resident. Landlord shall have the right to commingle the Security Deposit with other funds of Landlord. Landlord shall charge Resident for all keys, garage door remote control devices (if any) and other items issued at move-in that are not returned at move-out.

9.  **Utilities:** Resident shall be responsible for paying all utility services provided to the Premises as follows:
    A.  <u>Electricity, Telephone, Cable Television and Internet/High Speed Data.</u> For each of these utilities that separately service the Premises, Resident shall be responsible for ordering and arranging for such utilities, as well as for satisfying any deposit or other requirements of the utility provider. Resident acknowledges that any such utilities will not be available to the Premises on Resident's move-in date if Resident fails to arrange for service in advance. Resident shall pay for each of these utilities directly to the provider of such service as billed by the provider. If the provider requires that Resident be present at the time of installation, Resident must make arrangements to be present, and neither Landlord nor its leasing staff shall be responsible for being present if Resident is not there at the appointed time.
    B.  <u>Water, Sewer and Gas.</u> Resident shall be responsible for payment of water and sewer service and natural gas. The Premises has been submetered and Resident shall pay for such services in accordance with billings sent directly to Resident by a third party billing company. A one-time account "set-up fee" will be charged by the billing company. In addition, a billing fee will be charged with each bill for water and sewer service. Resident acknowledges and agrees that payment for provision of water, sewer and natural gas service is not included in the rent for the Premises and that such services are not base amenities for the Premises under Santa Monica Rent Control Law.
    C.  <u>Trash.</u> The cost of trash service will be allocated based upon the number of Occupants on the Lease as a percentage of the total number of occupants listed on all leases in the Community. Resident shall pay for trash service in accordance with billings sent directly to Resident by a third party billing company. The cost of trash service will be included in the water, sewer and natural gas bill sent by the third party billing company as noted in Section 9.B above. Resident acknowledges and agrees that payment for provision of trash service to the Premises is not included in the rent for the Premises and that such service is not a base amenity for the Premises under Santa Monica Rent Control Law.
    D.  <u>Failure to Pay.</u> Resident's failure to pay any bill for water, sewer, trash and/or natural gas service by the due date shall constitute a default under the Lease.

10. **Third Party Services:** While occupying the Premises, Resident will have the option of accepting certain services from third parties who have been designated by Landlord for the benefit of the Community and all residents. These third parties may provide concierge services, valet parking, car washes in the garage, high speed data/internet service, and cable television. Landlord reserves the right to designate other third parties from time to time to provide services for the benefit of the Community and all residents. All such third parties are collectively referred to herein as the "Service Providers." Resident shall be required to contract separately from this Lease for the services provided or arranged by the Service Providers. The provision of the services is not included with this Lease. For purposes of this Lease, the Service Providers do not relate to or include other third parties who have not been designated by Landlord, nor the services they may provide. The following terms and conditions apply to the Service Providers:

    A.  The Service Providers may be changed by Landlord in its sole and absolute discretion from time to time, subject to the terms and conditions of any agreement between Resident and the Service Providers.
    B.  The services available through the Service Providers may be augmented, eliminated or changed by Landlord or the Service Providers in their sole and absolute discretion from time to time, subject to the terms and conditions of any contract executed by Resident for the services.
    C.  Landlord acknowledges and agrees that Resident's right to occupy the Premises is not contingent upon Resident accepting or using any services from the Service Providers or continuing to use any services after initial acceptance and use.
    D.  Resident acknowledges and agrees that in the event Resident elects to receive any services from the Service Providers from time to time, then Resident will pay for the services directly to the Service Providers or others as applicable. Landlord and Resident acknowledge and agree that the fees and charges paid to the Service Providers or others for services shall not be deemed included in or a part of the rent for the Premises under this Lease or the Santa Monica Rent Control Law. In addition, Resident acknowledges and agrees that the Service Providers and others providing services through them may change their fees and charges from time to time without restriction, subject to any contract with Resident.

11. **Drought Impact:** Landlord shall have the right to pass on to Resident, on a proportional basis, fees or penalties levied by any applicable governmental agency against the Community or the Premises, as a result of drought conditions, in the event such conditions occur.

Rev. 3/02                                                                                  Initials:_____

12. **Pets:** No pets are allowed on the Premises unless specifically indicated in Section 1.I above or otherwise authorized in writing by Landlord.

13. **Condition of Premises and Neighborhood:** Resident has inspected the Premises and common areas and upon taking possession knows of their condition and the potential hazards they present to unsupervised children, including but not limited to lakes, streams, swimming pools, parking areas, balconies, windows and recreation areas. Resident accepts the Premises and common areas in such condition, and acknowledges that Landlord has made no representation or warranty of any nature regarding their condition or of the surrounding community where the Community is located. By its signature on this Lease, Resident shall be deemed to acknowledge that it has satisfied itself as to all matters within the surrounding community of concern to Resident, including but not limited to the presence of roads or airports that may create noise or traffic, the proximity and adequacy of police and fire protection, and proximity to commercial or industrial activities.

14. **Occupancy and Use of Premises:** Resident agrees:
A. To use and maintain the Premises solely as a private residence for the Occupants identified in Section 1.H and no other person(s) except for guests in accordance with Section 14.B.
B. Resident may have overnight guests in the Premises for not more than (i) 10 consecutive days or (ii) 20 days in a calendar year, and shall not be permitted to have more overnight guests than the number of bedrooms in the apartment at any one time without Landlord's prior written consent. For each guest that Resident desires to stay in the Premises for more than 10 consecutive days, Resident and each such guest will sign an "Extended Stay Guest Agreement" at the beginning of the guest's visit, which Agreement will govern issues such as parking arrangements, apartment and elevator keys, and other important matters affecting Resident and guest. Resident may not take in any boarders or roommates without Landlord's prior written consent. Any guest (regardless of the length of guest's stay), or any boarder or roommate to whom Landlord has not consented, is not a tenant of the Premises and will be subject to eviction by Landlord under legal process without prior service of notice to quit or other termination notice.
C. To use the Premises and all common areas in accordance with and to otherwise comply with Landlord's Rules and Regulations, a copy of which is attached as Exhibit "A" (and any amendments thereto delivered to Resident), and in accordance with any other policies or guidelines of Landlord attached to this Lease or delivered to Resident by Landlord.
D. Not to violate any law or ordinance of any governmental authority with respect to the Premises or any common areas.
E. To keep the interior and exterior of the Premises during the tenancy in good and clean condition, free of trash and unsightly material.
F. Not to use railings as clotheslines, put aluminum foil on windows, or erect antennae or aerials of any kind.
G. Except (i) for a home office that does not generate traffic or visits to the Community, or (ii) as otherwise permitted by applicable law, not to operate any business in or about the Premises. Further, Resident shall not do or keep anything in or about the Premises that will obstruct use of the common areas or that would increase Landlord's insurance premiums. To the extent any business is conducted within the Premises, Resident is responsible for obtaining any insurance related to the operation of such business, and Landlord shall not be responsible for any business interruption or any other claim arising as a result of Landlord's operation of the Building or the Community within which the Premises are located.
H. To pay for, in accordance with Section 18 below, all repairs required to fix damage caused by (i) Resident and/or Resident's guests and invitees, and/or (ii) anything placed within the Premises by Resident.
I. To clean the Premises and to return the Premises to Landlord in as good condition as upon the commencement of the Term, reasonable wear and tear excepted. Upon termination of the Lease, Landlord will provide Resident with a "move-out" letter explaining Resident's cleaning obligations.

15. **Enforcement of Rules and Regulations:** Landlord shall not be obligated to enforce any provision of the Rules and Regulations and/or any policy referenced above, and Landlord shall not be liable to any Resident for any violation by other residents any of the Rules and Regulations and/or policies. Further, any decision not to enforce or failure by Landlord to enforce any provision for the current or any other occasion, nor (b) be construed as a waiver by Landlord of the current breach or any subsequent breach of any such provision. Landlord has the unilateral right, upon written notice to Resident, to change the Rules and Regulations and/or policies at any time. Such new Rules and Regulations and/or policies will be effective upon Resident's receipt of written notice regarding such changes.

16. **Interference with Cable System:** Resident shall not install or use any outside radio or television antenna without the prior written consent of Landlord. Further, Resident shall not install, use or maintain any electronic or other device of any nature that interferes with the operation of the cable television or any other data transmission service or lines maintained in the Community by Landlord or other utility or entity under contract with Landlord or operating pursuant to franchise rights with the jurisdiction where the Community is located.

17. **Satellite Dishes:** Landlord will permit Resident to install one satellite dish for personal, private use on the Premises under the following conditions:
A. The satellite dish must be one meter or less in diameter;
B. The satellite dish may be installed only inside the balcony, patio or terrace that is under the exclusive control of Resident. The satellite dish, or any part thereof, shall not extend beyond the Premises and/or the Community and shall not install any satellite dish in common areas of the Community, including but not limited to, outside walls, roofs, windows sills, common balconies or stairways;
C. Resident shall not make any physical modifications to the Premises and/or the Community and shall not install any satellite dish in common areas of the Community, including but not limited to, outside walls, roofs, windows sills, common balconies or stairways;
D. Resident shall not install any satellite dish in a manner that causes physical or structural damage to the Premises, excluding ordinary wear and tear, including but not limited to, holes drilled through exterior walls;
E. Resident shall install, maintain and remove the satellite dish in a manner that is consistent with industry standards and shall be liable for any damage or injury resulting from the negligent installation, maintenance, operation or removal of the satellite dish. Installation shall not interfere with cable, telephone or electrical systems of Landlord or other Residents, nor may it be connected to Landlord's telecommunications systems.
F. Resident shall indemnify, defend and hold Landlord harmless from any damage or injury resulting from Resident's negligent or improper installation, maintenance, operation or removal of any satellite dish, including paying Landlord's attorneys' fees and costs. The foregoing indemnity shall not in anyway limit any other indemnity contained in this Lease. Resident's obligations under this section shall survive the expiration and/or termination of this Lease.
G. Resident shall maintain, at all times during the tenancy, public liability and property damage insurance with a single combined liability limit of $100,000.00 and property damage limit of not less than $50,000.00 insuring against claims for bodily injury, death or property damage occurring from the installation, maintenance, operation and/or removal of the satellite dish. The policy shall name Landlord as an additional insured and contain an endorsement requiring thirty (30) days written notice from the insurance company to Landlord before cancellation or change in the coverage, scope or amount of any policy to the detriment of Landlord. Resident shall provide Landlord with proof of such insurance to Landlord's satisfaction before any satellite dish is installed.
H. Upon termination of this Lease, Resident shall remove the satellite dish and pay for any damages and the cost of repairs or repainting that may be reasonably necessary to restore the Premises to its condition prior to the installation of the satellite dish.

Initials: _____

18. **Waste, Quiet Enjoyment and Supervision:** Resident shall not, and shall make sure that his/her guests and invitees shall not, disturb (including, but not limited to, loud or late parties or loud music), interfere, annoy, endanger or inconvenience other residents of the Community, neighbors, Landlord, Landlord's employees, agents and contractors, nor violate any law, nor commit or permit waste or nuisance in or about the Premises or the Community. Sub-woofer sound systems are not permitted on the Premises. Violation of this provision, at Landlord's option, shall be deemed a noncurable breach of this Lease.

A. Resident shall not use in any wasteful or unreasonable or hazardous manner any of the utilities furnished by Landlord.

B. Adult Residents shall be responsible for the supervision and control of all visitors and minor children residing with them in the Premises or visiting with them while such persons are within the Premises or anywhere within the Community. Children must obey Landlord's Rules and Regulations. Adult residents shall be solely responsible to see that their children, guests and visitors obey the Rules and Regulations. Violation of this provision shall constitute grounds for immediate termination of this Lease in Landlord's sole discretion.

C. If children reside in the Premises or visit Resident from time to time ("Resident's Children"), Resident acknowledges its obligation to supervise their activities and to insure their safety. Resident must review Landlord's Rules and Regulations and other policies prior to allowing Resident's Children to use any recreational facilities and common areas. Resident will inspect the facilities prior to use by Resident's Children to determine if any safety hazards exist and, if so, immediately report any observed hazard to the Community business office. Within the Premises, Resident will insure the safety of Resident's Children and will not place furniture or other items so as to provide such children with access to windows. Resident shall review the features of the Premises and determine if there are any hazards therein and advise the Community business office immediately if any hazards are discovered. Resident agrees to assume the risk of injury to Resident's Children, and further agrees to hold Landlord and its agents harmless from any liability arising from the use of the Premises, recreational facilities or common areas by Resident's Children. Without limiting any other indemnity contained herein, Resident agrees to fully defend and indemnify Landlord and its agents from any claim brought by or on behalf of Resident's Children. The foregoing indemnity shall not in any way limit any other indemnity contained in this Lease. Resident's obligations under this section shall survive the expiration and/or termination of this Lease.

19. **Repairs:** Landlord shall have no obligation to make any repairs requested by Resident unless Resident has given written notice to Landlord and Landlord has had a reasonable time to perform any repairs it is obligated to make. Resident shall make no repairs to the Premises, except for routine cleaning and maintenance, unless Landlord gives Resident prior written authorization to do so. If repairs to the Premises are required, Resident shall give Landlord immediate written notification. If after receipt of such notice, Landlord's inspection indicates that such repairs are needed, Landlord shall repair the Premises and the cost of such repair shall be paid as follows:

A. Landlord's Obligation: If the condition requiring repair is one that makes the Premises "untenantable" as defined in California Civil Code Section 1941.1, Landlord shall pay for the repairs unless the "untenantable" condition is occasioned by any of the following (in which event Resident shall pay for the repairs as provided in Section 19.B below):

    i.   Resident's want of ordinary care;

    ii.   Resident's failure to keep the Premises clean and sanitary;

    iii.  Resident's failure to dispose of all rubbish, garbage and other waste;

    iv.  Resident's failure to properly use and operate all electrical, gas and plumbing fixtures and keep them clean and sanitary;

    v.   The destruction, defacement, damage, impairment or removal of any part of the Premises, common area, recreational facilities or any of the facilities, furnishings, equipment or appurtenances thereto by Resident or any person on the Premises or the Community with Resident's permission; or

    vi.  Resident's occupation of the Premises other than as his residence and/or Resident's use of the living, sleeping, cooking, or dining portions of the Premises for purposes other than those for which such portions were respectively designed or intended.

B. Resident's Obligation: If the condition requiring repair is not one that makes the Premises "untenantable" or is occasioned by the circumstances described in subsections i through vi above, Resident shall pay for the repairs.

C. Relocation in Event of Repairs: If any repairs (i) arise from any matter for which Resident is obligated to pay as provided in (A) above, and (ii) are of a nature that, in Landlord's opinion, require Resident to vacate the Premises for a temporary period in order for the repairs to be made, then Resident shall vacate the Premises upon three (3) days' prior written notice from Landlord and Resident shall be responsible for the cost of temporary lodging during the period of the repairs. In addition, rent shall not be abated for any period of dislocation caused by the repairs described in the preceding sentence. On the other hand, if any repairs (iii) arise from any matter not caused by Resident and for which Resident has no obligation to pay under subsection (A) above (for example, the presence of mold not caused by Resident), and (iv) are of a nature that, in Landlord's opinion, require Resident to vacate the Premises for a temporary period in order for the repairs to be made, then Resident shall vacate the Premises upon three (3) days' prior written notice from Landlord and Landlord shall be responsible for the reasonable costs of the temporary relocation.

20. **Alterations And Improvements:** Resident shall make no upgrades to, alterations of or improvements to the Premises without obtaining Landlord's prior written consent, including without limitation, painting, wallpapering, or installing any other window covering, wall covering, permanent shelving and flooring. In addition, Resident shall not add or change any lock or locking device, bolt or latch on the Premises without prior written consent from Landlord, and in the event Landlord consents to such change, Resident shall provide Landlord with a key to any such lock or device upon installation thereof. If Landlord agrees to any such upgrade, alteration or improvement, Resident acknowledges and agrees that upon Landlord's request upon expiration of the tenancy, Resident shall, prior to vacating the Premises, remove such upgrade, alteration or improvement and restore the Premises to the condition in which it existed prior to the installation of such upgrade, alteration or improvement. Resident shall not, as a result of any upgrades, alterations or improvements installed by or on behalf of Resident, create or allow any mechanics or other lien to be placed on the Premises or the Community. If for any reason such lien is so created or placed, Resident shall, upon demand of Landlord, clear the same in a manner acceptable to Landlord and indemnify and save Landlord, the Premises and the Community free and harmless from any liability for any damage, claim, or loss arising therefrom. The foregoing indemnity shall not in any way limit any other indemnity contained in this Lease. Resident's obligations under this section shall survive the expiration and/or termination of this Lease.

Initials: _____

21. **Right of Entry:** After giving reasonable notice to Resident, Landlord may enter the Premises during normal business hours to make repairs, to supply necessary or agreed services, and/or to show the Premises to workers and contractors and to prospective purchasers, lenders or tenants. In addition, if a detached garage is included in the Premises leased to Resident, Landlord may, after giving reasonable notice to Resident, enter the Garage during normal business hours to inspect the Garage for compliance with the terms of this Lease and Landlord's Rules and Regulations. For purposes of this Lease, normal business hours are deemed to be 8:00 a.m. to 6:00 p.m., Monday through Saturday. Landlord may enter the Premises and/or any detached garage included within the Premises without advance notice to Resident and at any time (i) in case of an emergency, (ii) when Resident has abandoned or surrendered the Premises, and/or (iii) pursuant to court order or search warrant. If any repair work performed requires that Resident temporarily vacate the Premises, then Resident shall temporarily vacate the Premises upon being served seven days prior written notice. Resident agrees that Resident's sole compensation for vacating the Premises shall be, for the number of days Resident is displaced: (a) reimbursement for the cost of interim housing approved in advance by Landlord (to the extent that Resident is not temporarily relocated to another residence within the Community or another apartment community owned by Landlord), and (b) any other items required under applicable law. If Resident is relocated within the Community or another apartment community owned by Landlord for the period of the repair, then no compensation shall be made to Resident for such temporary relocation.

22. **Assignment and Subletting:** Resident shall not assign its interests under this Lease and shall not sublet all or any part of the Premises, or allow any other person or entity other than those persons listed in Section 1.H above or guests pursuant to Section 14.B above to occupy or use all or any part of the Premises. No assignment, whether voluntary or involuntary, by operation of law, under legal process or proceedings, by receivership, in bankruptcy or otherwise, and no subletting shall be valid or effective, and, at Landlord's election, shall constitute a default.

23. **Damage and Destruction:**
    A. Resident's Obligation: Resident shall hold Landlord harmless from and shall pay on demand all reasonable costs of repair or restoration resulting from any damage to or destruction of the Premises, any appliances, window coverings, carpet or other furnishings provided by Landlord, or any portion of the Community resulting from any act or omission of Resident and/or Resident's guests and invitees, including without limitation, damage to the building, common area or Premises caused by Resident's movers during move-in or move-out, damage or destruction resulting from leaving windows open during rains or storms, flows of water from pipes, faucets or other sources, failure to turn off gas or electrical appliances or lights when not in use and littering of the Premises or any portion of the Community.
    B. Effect of Damage or Destruction: In the event of damage to or destruction of the Premises or any portion of the Community by fire, flood, earthquake, or any other cause or causes (collectively, "Damage Event"), Landlord shall have the option to:
        i. Treat this Lease as continuing and repair or restore the Premises to their condition before such Damage Event within thirty (30) days of the occurrence of the same, or if insured, within thirty (30) days after Landlord receives permission from the insurer to proceed with repair or restoration. (If the repairs will take more than thirty (30) days to complete, and Landlord elects to complete the repairs, then Landlord shall not be in breach of this Section so long as Landlord commences the repairs within such thirty (30) day period and diligently pursues completion of the repairs); or
        ii. Elect not to repair the damage, in which event this Lease shall terminate as provided in Landlord's written notice to Resident.
    After the occurrence of any Damage Event, (a) Resident's obligation to pay Rent hereunder shall be abated in an amount which Landlord, in its sole discretion, shall determine to be proportionate to the area of the Premises rendered unfit for use by Resident during the period of repair or restoration; and (b) Resident's sole remedy against Landlord shall be rent abatement, and Resident shall not be entitled to any other award of damages or compensation from Landlord. Resident acknowledges and agrees that Landlord has no liability for any personal property damage within the Premises as a result of any such Damage Event.

24. **Hazardous Materials:** Resident shall not use, store or dispose of any hazardous, toxic or radioactive matter (including but not limited to those materials identified as such under state or federal law) in, on or about the Premises, other than ordinary household products. Resident shall be solely responsible and shall defend, indemnify and hold Landlord and Landlord's Agents (as hereinafter defined) harmless from and against any claims, costs and liabilities, including attorneys fees and costs, arising out of or in connection with any storage, use and/or disposal of such materials. The foregoing indemnity shall not in any way limit any other indemnity contained in this Lease. Resident's obligations under this section shall survive the expiration and/or termination of this Lease.

25. **Resident Insurance Requirements:** Resident shall maintain at all times during the Term of this Lease, at Resident's sole expense, a standard type of tenant's or Renter's Homeowners insurance policy, or its equivalent, issued by a licensed insurance company. Such policy shall provide limits of liability of at least (i) $100,000 personal liability, and (ii) the greater of $50,000.00 or the full replacement value on Resident's personal property. Resident shall be responsible for determining if these levels of insurance coverage are adequate for Resident and Resident's possessions. Resident hereby (a) releases Landlord and its agents, authorized representatives and employees (collectively, "Landlord's Agents") from any and all claims for damages or loss to Resident's personal property (including any deductible and including loss caused by earthquake or other Damage Event) and from any and all claims for personal liability, damages or loss in, on or about the Premises that are caused by or result from risks that are or would be insured under Resident's insurance coverage, including, but not limited to, damage or loss caused by fire, theft, rain, water overflows and leakage, and (b) waives any and all rights of recovery and rights of subrogation against Landlord's Agents in connection with any damage, claim or loss that is or would be covered by Resident's insurance coverage.

26. **Condemnation:** If the whole or any part of the Premises shall be taken by exercise of the power of eminent domain, this Lease shall terminate upon the date actual physical possession thereof shall be so taken, and all damages awarded from such taking shall be the sole property of Landlord. A voluntary conveyance of the Premises by Landlord under threat of condemnation shall be deemed to be taken under the power of eminent domain within the meaning of this section.

27. **Defaults:** The following shall constitute a material default and a breach of this Lease by Resident:
    A. Resident abandons or vacates the Premises prior to the end of the Term.
    B. Resident fails to make any payment of Rent or any other payment required to be made by Resident hereunder, as and when due, which failure continues for a period of three (3) days after written notice thereof from Landlord to Resident.
    C. Resident fails to comply with any provision of this Lease or to perform any of Resident's obligations under this Lease, including but not limited to the Rules and Regulations, where such failure continues for more than three (3) days after written notice thereof from Landlord to Resident. If the breach is of a nature that cannot be cured within such three (3) day period or is deemed a noncurable breach under this Lease (e.g., assignment or subletting, illegal activity, waste, nuisance, violation of Sections 17 or 26.D, etc.), then at Landlord's option, this Lease shall be terminated upon service of three days written notice to quit.
    D. Resident provides materially false information on the Application to Rent or Resident's credit application (such matter shall be deemed to be a noncurable default at the time of Landlord's discovery that any such information was materially false).

Rev. 3/02                                                                                      Initials: _____ _____

28.    **Remedies:** In the event of any material default or breach by Resident, Landlord may at anytime thereafter, with or without notice or demand, and without limiting Landlord in the exercise of any right or remedy that Landlord may have by reason of such default or breach:

A. Terminate Resident's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Resident shall immediately surrender the Premises to Landlord. Upon re-entry by Landlord following such termination, Landlord may consider any personal property belonging to Resident and left on the Premises to be abandoned, and may dispose of all such personal property in accordance with applicable law. If Landlord reasonably believes that the abandoned personal property has a total resale value of less than $300, Landlord may keep the personal property for Landlord's use or otherwise dispose of it in accordance with law.

B. In the event of such termination, Landlord may recover from Resident the amount provided in California Civil Code Section 1951.2, including the worth at time of the award of the amount by which (i) the unpaid Rent owing from the date Resident vacates the Premises until the end of the Lease Term (including the balance of the Lease Term after the date of judgment) exceeds (ii) the amount of such rental loss for the same period that Resident proves could be reasonably avoided.

C. The remedies provided in Sections 28.A and 28.B above are not exclusive, and Landlord may pursue any one or more of such remedies or any other remedy provided by law.

D. In the event that Landlord discovers, prior to Resident's occupancy of the Premises, the inaccuracy of any information provided by Resident on the Application to Rent or the credit application or the credit application is disapproved, Landlord shall, in addition to any other remedies provided herein or by law, have the right to terminate this Lease immediately.

E. If at the time this Lease is terminated, Resident has not fully paid Landlord for all amounts owing hereunder, Resident is hereby notified that a negative credit report reflecting on Resident's credit record may be submitted to a credit reporting agency. In addition to any other remedy hereunder, Landlord may also turn over collection of such delinquent amount to a collection agency.

F. In the event either Landlord or Resident brings any action in connection with this Lease, the party prevailing in such action shall be entitled to recover as part of such action, reasonable attorneys' fees, costs of collection, expert witness fees, court costs and other legal costs.

29.    **Limitation of Actions and Claims:** Any claim or action of any kind (including, but not limited to, any claims for wrongful eviction, breach of the covenant of quiet enjoyment, breach of the warranty of habitability, or violation of any rent control law) arising out of or related to this Lease shall be barred or waived unless the action, suit, administrative hearing or other proceeding is commenced within one hundred eighty (180) days after the occurrence of the matter giving rise to the action or claim, or one hundred eighty (180) days after the termination of this Lease, whichever first occurs. This limitation shall also apply to claims that might otherwise be asserted as a "set off," credit, cross-complaint, or defense in such action or claim or in the context of the proceeding brought by either Landlord or Resident. This limitation shall survive the termination of this Lease.

30.    **Limitations on Landlord's Liability and Indemnification by Resident:**

A. Injury, Loss or Damage: Except to the extent caused by the gross negligence or willful misconduct of Landlord or Landlord's Agents (as defined in Section 25 above), Landlord shall not be liable for any injury (including death) to any person caused by any use of the Premises or the Community by Resident, Resident's guests and invitees, or by any person (including but not limited to other residents), or arising from any accident or fire or other casualty thereon, or from any other cause whatsoever, nor shall Landlord be liable for any loss or damage to any personal property belonging to Resident or located on the Premises, the Community or other facility under the control of Landlord. Resident hereby agrees to hold Landlord harmless from all liability for any such injury, loss or damage.

B. Resident shall indemnify, defend and hold harmless Landlord for any liability, damage, claims for personal injury and/or property damage, cost or expense (including reasonable attorneys' fees), caused by the negligent, willful or intentional act or omission of Resident. Resident's guests and/or invitees. The foregoing indemnity shall not in any way limit any other indemnity contained in this Lease. Resident's obligations under this section shall survive the expiration and/or termination of this Lease.

C. Other Limitations: Resident also agrees that Landlord shall not be liable for matters (and this Lease shall not be terminated by any interruption or interference with services or accommodations due Resident) caused by strike, riot, orders or acts of public authorities, acts of other residents, accidents, interruption in or shortages of public utilities, the making of necessary repairs to the building of which the Premises are a part, or any other cause beyond Landlord's control.

31.    **Expiration; Tenancy From Month To Month:    The rights and obligations of Landlord and Resident, and the status of Resident's tenancy, upon expiration of the Term of this Lease, will vary depending upon whether Resident provides Landlord with a Notice of Intent to Vacate prior to the end of the term:**

A. Where Notice of Intent to Vacate is Given. In the event this Lease shall terminate upon the expiration of the Term after Resident has delivered a Notice of Intent to Vacate on or before thirty (30) days prior to the end of the Term, Resident shall vacate the Premises on or before such expiration date, and any holding over by Resident after such expiration date shall not constitute a renewal of this Lease or give Resident any rights with respect to the Premises. If Resident fails to so vacate and surrender the Premises upon such expiration or termination, Resident shall indemnify and hold Landlord harmless from any loss or liability, including without limitation any claims made by any succeeding resident, arising from such failure to vacate the Premises.

B. Where Notice of Intent to Vacate is Not Given. If Resident does not give Notice of Intent to Vacate to Landlord on or before thirty (30) days prior to the end of the Term, this Lease shall continue as a tenancy from month to month on the same terms as provided in this Lease, except that Landlord may, at its option, increase the Rent by such amount as is approved by the Santa Monica Rent Control Board. So long as Resident complies with the terms of the Lease, the tenancy from month-to-month shall continue thereafter until Resident terminates such tenancy by thirty (30) days' prior written notice to Landlord, in which event the tenancy shall be cancelled effective at the end of the thirtieth (30th) day following such notice of termination.

C. Condition of Premises Upon Vacation of Premises. Upon vacating the Premises, Resident shall (1) deliver the Premises empty of all persons, (2) remove all of Resident's personal property from the Premises and from all parking spaces and storage spaces provided under the Lease, (3) clean the Premises pursuant to Section 14.I above, and (4) provide Landlord with Resident's forwarding address.

32.    **Notices, Demands, Requests And Service Of Process:**

A.    Notices, Demands and Requests: All notices, demands and requests that may be or are required to be given pursuant to the provisions of this Lease may be served pursuant to Section 1162 of the California Code of Civil Procedure. Any such notice shall be sent as follows:

　　　1.    If to Landlord, the Notice shall be sent to the Community Manager of the Premises at the address specified in Section 1.J above or to such other person or to such other address as Landlord may hereinafter designate by written notice.

　　　2.    If to Resident, the Notice shall be sent to Resident at the address of the Premises specified in Section 1.B above or to such other address as Resident may hereinafter designate by written notice.

B.    Service of Process on Landlord or Manager: Service of process upon Landlord may be served as provided by law upon Landlord's authorized agent at the following address or upon such other person or at such other address as Landlord may hereinafter designate by written notice: Irvine Apartment Management Company, 43 Discovery, Suite 150, Irvine, CA 92618 (949) 450-4262.

Initials: _____

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first above written. By signing below, Resident acknowledges that Resident has read and understands each and every term, covenant and provision of this Lease.

**RESIDENT:**
The undersigned expressly understand(s) that Section 31 above contains provisions under which (a) this Lease may automatically continue as a tenancy from month-to-month upon the expiration of the term hereof, and (b) that the Rent may be increased during such continued tenancy as authorized by the Rent Control Board.

NAME: _____  5/28/02
Martin C. Yacoobian, III

NAME: _____  DATE: _____

NAME: _____  DATE: _____

NAME: _____  DATE: _____

NAME: _____  DATE: _____

NAME: _____  DATE: _____

**LANDLORD:**
Irvine Apartment Communities, L.P., a Delaware limited partnership

By: Irvine Apartment Management Company, a California general partnership, its duly authorized agent

By: _____

Name: _____

Title: _____

Rev. 3/02

Page 18 of _____

# EXHIBIT B

## Notice to Pay Rent or Quit

To **Martin C. Jacobian III, RJ Cipriani and Greice Cipriani**

AND ALL OTHERS IN POSSESSION:

WITHIN THREE DAYS, after the service on you of this notice, you are hereby required to pay the delinquent rent of the premises hereinafter described, of which you now hold possession, as follows:

$**6,232.00** FROM **8/1/2012** TO **8/31/2012**

Or you are hereby required to deliver up possession of the hereinafter described premises, within three days after service on you of this notice, to the undersigned or **1221 Ocean** who/which is authorized to receive the same, or legal proceedings will be instituted against you to declare the forfeiture of the lease or rental agreement under which you occupy the hereinbelow described property and to recover possession of said premises, to recover all rent past due, court costs, attorney's fees as permitted by law, and possible additional statutory damages of up to SIX HUNDRED DOLLARS ($600.00) in accordance with California Code of Civil Procedure Section 1174(b), as a result of your failure to comply with the terms of this notice.

The premises herein referred to are situated in the City of **Santa Monica**, County of **Los Angeles**, State of California, designated by the number and street as: **1221 Ocean Avenue, # 408   Santa Monica, CA. 90401**

You are further notified that the undersigned does elect to declare the forfeiture of your lease or rental agreement under which you hold possession of the above-described premises.

* Payments must be made to Owner/Agent at the following address: **1221 Ocean Avenue/Mark Rico**
* Telephone number for the above address: **310-255-1221**
* Payments made in person shall be delivered to owner/agent between the hours of **7am** and **7am** on the following days of the week: **7 days per week / 24 hours per day**

☒ Sunday  ☒ Monday  ☒ Tuesday  ☒ Wednesday  ☒ Thursday  ☒ Friday  ☒ Saturday

Dated this **Seventh** day of **August**, 20**12**.

_____
Landlord/Agent

**Mark Rico**

EXHIBIT **B**

Page 20 of _____

# EXHIBIT C

SUM-130

# SUMMONS
## (CITACION JUDICIAL)
### UNLAWFUL DETAINER-EVICTION
### (RETENCIÓN ILÍCITA DE UN INMUEBLE-DESALOJO)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Martin C. Yacoobian, III; Greice Cipriani; R.J. Cipriani; DOES 1 TO 10 INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
IRVINE APARTMENT COMMUNITIES, L.P.

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 16 2012

John A. Clarke, Executive Officer/Clerk

By F. Sahara, Deputy

You have 5 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. (To calculate the five days, count Saturday and Sunday, but do not count other court holidays. If the last day falls on a Saturday, Sunday, or a court holiday then you have the next court day to file a written response.) A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

Tiene 5 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. (Para calcular los cinco días, cuente los sábados y los domingos pero no los otros días feriados de la corte. Si el último día cae en sábado o domingo, o en un día en que la corte esté cerrada, tiene hasta el próximo día de corte para presentar una respuesta por escrito). Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

1. The name and address of the court is:
   *(El nombre y dirección de la corte es):*

   SANTA MONICA / WEST DISTRICT
   1725 MAIN STREET, RM232
   SANTA MONICA, CA 90401

   CASE NUMBER: *(Número del caso):* **12U02952**

2. The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
   *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
   Chris Evans, SBN 202135          Kimball, Tirey & St. John LLP
   350 S. Figueroa St. Suite 498    (213) 337-0050
   Los Angeles, CA 90071

3. *(Must be answered in all cases)* An unlawful detainer assistant (Bus. & Prof. Code, §§ 6400-6415)  [X] did not  [ ] did for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, complete item 6 on the next page.)*

Date: *(Fecha)* AUG 16 2012   JOHN A. CLARKE, CLERK   Clerk, by *(Secretario)* F. Sahara , Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

4. NOTICE TO THE PERSON SERVED: You are served
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify):*
   c. [ ] as an occupant
   d. [ ] on behalf of *(specify):*
      under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
             [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
             [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
             [ ] CCP 415.46 (occupant)           [ ] other *(specify):*
   5. [ ] by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-130 [Rev. July 1, 2009]

Martin Dean's
ESSENTIAL FORMS

**SUMMONS—UNLAWFUL DETAINER-EVICTION**

Code of Civil Procedure, §§ 412.20, 415.456, 1167
www.courtinfo.ca.gov

EXHIBIT 

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* <br> — Chris Evans, SBN 202135 <br> Kimball, Tirey & St. John LLP <br> 350 S. Figueroa St. Suite 498 <br> Los Angeles, CA 90071 <br> ~SSICA S. WEI....~ <br> Jar # 254707 | FOR COURT USE ONLY |

TELEPHONE NO.: (213) 337-0050        FAX NO. *(Optional):* (213) 337-0080

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

STREET ADDRESS: 1725 MAIN STREET, RM232

MAILING ADDRESS:

CITY AND ZIP CODE: SANTA MONICA, CA 90401

BRANCH NAME: SANTA MONICA / WEST DISTRICT

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 16 2012

John A. Clarke, Executive Officer/Clerk

By F. Sahara, Deputy

PLAINTIFF: IRVINE APARTMENT COMMUNITIES, L.P.

DEFENDANT: Martin C. Yacoobian, III; Greice Cipriani; R.J. Cipriani

[X] DOES 1 TO 10 inclusive.

| COMPLAINT - UNLAWFUL DETAINER* | CASE NUMBER: |
|---|---|
| [X] COMPLAINT   [ ] AMENDED COMPLAINT *(Amendment Number):* | 12U02952 |

**Jurisdiction** *(check all that apply):*

[X] ACTION IS A LIMITED CIVIL CASE

Amount demanded   [X] does not exceed $10,000

[ ] exceeds $10,000 but does not exceed $25,000

[ ] ACTION IS AN UNLIMITED CIVIL CASE (amount demanded exceeds $25,000)

[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint *(check all that apply):*

[ ] from unlawful detainer to general unlimited civil (possession not in issue)        [ ] from limited to unlimited

[ ] from unlawful detainer to general limited civil (possession not in issue)        [ ] from unlimited to limited

1. PLAINTIFF *(name each):* IRVINE APARTMENT COMMUNITIES, L.P.

alleges causes of action against DEFENDANT *(name each):*
Martin C. Yacoobian, III; Greice Cipriani; R.J. Cipriani

2. a. Plaintiff is        (1) [ ] an individual over the age of 18 years.        (4) [ ] a partnership.

(2) [ ] a public agency.        (5) [ ] a corporation.

(3) [X] other *(specify):*   Limited Partnership

b. [ ] Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of *(specify):*

3. Defendant named above is in possession of the premises located at *(street address, apt. no., city, zip code, and county):*
1221 Ocean Avenue, #408
Santa Monica, CA 90401
County of LOS ANGELES

4. Plaintiff's interest in the premises is        [X] as owner   [ ] other *(specify):*

5. The true names and capacities of defendants sued as Does are unknown to plaintiff.

6. a. On or about *(date):* 8/1/2009        defendant *(name each):*
Martin C. Yacoobian, III; Greice Cipriani; R.J. Cipriani

(1) agreed to rent the premises as a   [ ] month-to-month tenancy   [X] other tenancy *(specify):*   1 Year

(2) agreed to pay rent of $ 6,232.00   payable [X] monthly   [ ] other *(specify frequency):*

(3) agreed to pay rent on the [ ] first of the month   [X] other day *(specify):*   First

b. This [X] written   [ ] oral   agreement was made with

(1) [ ] plaintiff.        (3) [ ] plaintiff's predecessor in interest.

(2) [X] plaintiff's agent.        (4) [ ] other *(specify):*

*NOTE: Do not use this form for evictions after sale (Code Civ. Proc., § 1161a).

Form Approved for Optional Use
Judicial Council of California
UD-100 [Rev. July 1, 2005]

Martin Dean's
ESSENTIAL FORMS™

**COMPLAINT - UNLAWFUL DETAINER**

Civil Code, § 1940 et seq.
Code of Civil Procedure §§ 425.12, 1166
www.courtinfo.ca.gov

| PLAINTIFF (Name): IRVINE APARTMENT COMMUNITIES, L.P. | CASE NUMBER |
|---|---|
| DEFENDANT (Name): Martin C. Yacoobian, III; Greice Cipriani; R.J. Cipriani | |

6. c. ☒ The defendants not named in item 6a are
    (1) ☐ subtenants.
    (2) ☐ assignees
    (3) ☒ other (specify):   unknown as to Does.
  d. ☐ The agreement was later changed as follows (specify):

  e. ☐ A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached
and labeled Exhibit 1. (Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)
  f. ☒ (For residential property) A copy of the written agreement is not attached because (specify reason):
    (1) ☐ the written agreement is not in the possession of the landlord or the landlord's employees or agents.
    (2) ☒ this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).

7. ☒ a. Defendant (name each): Martin C. Yacoobian, III; Greice Cipriani; R.J. Cipriani

  was served the following notice on the same date and in the same manner:
    (1) ☒ 3-day notice to pay rent or quit    (4) ☐ 3-day notice to perform covenants or quit
    (2) ☐ 30-day notice to quit    (5) ☐ 3-day notice to quit
    (3) ☐ 60-day notice to quit    (6) ☐ Other (specify):
  b. (1) On (date): 08/10/2012    the period stated in the notice expired at the end of the day.
    (2) Defendants failed to comply with the requirements of the notice by that date.
  c. All facts stated in the notice are true.
  d. ☒ The notice included an election of forfeiture.
  e. ☒ A copy of the notice is attached and labeled Exhibit 2. (Required for residential property. See Code Civ. Proc.,
    § 1166.)
  f. ☐ One or more defendants were served (1) with a different notice, (2) on a different date, or (3) in a different
    manner, as stated in Attachment 8c. (Check item 8c and attach a statement providing the information required
    by items 7a–e and 8 for each defendant.)

8. a. ☒ The notice in item 7a was served on the defendant named in item 7a as follows:
    (1) ☐ by personally handing a copy to defendant on (date):
    (2) ☐ by leaving a copy with (name or description):
    a person of suitable age and discretion, on (date):    at defendant's
    ☐ residence  ☐ business AND mailing a copy to defendant at defendant's place of residence on
    (date):    because defendant cannot be found at defendant's residence or usual
    place of business.
    (3) ☒ by posting a copy on the premises on (date): 8/7/2012    ☐ AND giving a copy to a
    person found residing at the premises AND mailing a copy to defendant at the premises on (date): 8/7/2012
    (date): 8/7/2012
      (a) ☐ because defendant's residence and usual place of business cannot be ascertained OR
      (b) ☒ because no person of suitable age or discretion can be found there.
    (4) ☐ (Not for 3-day notice; see Civil Code, § 1946 before using) by sending a copy by certified or registered
    mail addressed to defendant on (date):
    (5) ☐ (Not for residential tenancies; see Civil Code, § 1953 before using) in the manner specified in a written
    commercial lease between the parties.
  b. ☐ (Name):
    was served on behalf of all defendants who signed a joint written rental agreement.
  c. ☐ Information about service of notice on the defendants alleged in item 7f is stated in Attachment 8c.
  d. ☐ Proof of service of the notice in item 7a is attached and labeled Exhibit 3.

| PLAINTIFF *(Name)*: | IRVINE APARTMENT COMMUNITIES, L.P. | CASE NUMBER: |
|---|---|---|
| DEFENDANT *(Name)*: | Martin C. Yacoobian, III; Greice Cipriani; R.J. Cipriani | |

9. ☐ Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.

10. ☒ At the time the 3-day notice to pay rent or quit was served, the amount of rent due was $ 6,232.00

11. ☒ The fair rental value of the premises is $ 207.73      per day.

12. ☐ Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure section 1174(b). *(State specific facts supporting a claim up to $600 in Attachment 12.)*

13. ☒ A written agreement between the parties provides for attorney fees.

14. ☒ Defendant's tenancy is subject to the local rent control or eviction control ordinance of *(city or county, title of ordinance, and date of passage)*: Rent Stabilization Ordinance of the City of Santa Monica, passed April 10, 1979.

Plaintiff has met all applicable requirements of the ordinances.

15. ☐ Other allegations are stated in Attachment 15.

16. Plaintiff accepts the jurisdictional limit, if any, of the court.

17. PLAINTIFF REQUESTS
a. possession of the premises.
b. costs incurred in this proceeding:
c. ☒ past-due rent of $    6,232.00
d. ☒ reasonable attorney fees.
e. ☒ forfeiture of the agreement.

f. ☒ damages at the rate stated in Item 11 from *(date)*: 09/01/2012     for each day that defendants remain in possession through entry of judgment.
g. ☐ statutory damages up to $600 for the conduct alleged in Item 12.
h. ☐ other *(specify)*:

18. ☒ Number of pages attached *(specify)*: 2

## UNLAWFUL DETAINER ASSISTANT   (Bus. & Prof. Code, §§ 6400-6415)

19. *(Complete in all cases.)* An unlawful detainer assistant ☒ did not ☐ did   for compensation give advice or assistance with this form. *(If plaintiff has received any help or advice for pay from an unlawful detainer assistant, state:)*

a. Assistant's name:
b. Street address, city, and zip code:

c. Telephone No.:
d. County of registration:
e. Registration No.:
f. Expires on *(date)*:

Date: 08/14/2012

JESSICA S. WEISMAN
Bar # 254707

_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

### VERIFICATION

*(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)*

I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 08/14/2012

_____
(TYPE OR PRINT NAME)

▶ See Attachment
_____
(SIGNATURE OF PLAINTIFF)

## Notice to Pay Rent or Quit

TO _Martin C. Yacoobian III, RJ Cipriani and Greice Cipriani_

AND ALL OTHERS IN POSSESSION:

WITHIN THREE DAYS, after the service on you of this notice, you are hereby required to pay the delinquent rent of the premises hereinafter described, of which you now hold possession, as follows:

$ _6,232.00_ FROM _8/1/2012_ TO _8/31/2012_

Or you are hereby required to deliver up possession of the hereinafter described premises, within three days after service on you of this notice, to the undersigned or _1221 Ocean_ who is authorized to receive the same, or legal proceedings will be instituted against you to declare the forfeiture of the lease or rental agreement under which you occupy the hereinbelow described property and to recover possession of said premises, to recover all rent past due, court costs, attorney's fees as permitted by law, and possible additional statutory damages of up to SIX HUNDRED DOLLARS ($600.00) in accordance with California Code of Civil Procedure Section 1174(b), as a result of your failure to comply with the terms of this notice.

The premises herein referred to are situated in the City of _Santa Monica_
County of _Los Angeles_, State of California, designated by the number and street
as: _1221 Ocean Avenue, # 408   Santa Monica, CA 90401_

You are further notified that the undersigned does elect to declare the forfeiture of your
lease or rental agreement under which you hold possession of the above-described premises.

•  Payments must be made to Owner/Agent at the following address: _1221 Ocean Avenue / Mark Rico_
■  Telephone number for the above address: _310-255-1221_
•  Payments made in person shall be delivered to owner/agent between the hours of _7am_
   and _7am_ on the following days of the week: _7 days per week / 24 hours per day_

[X] Sunday    [X] Monday    [X] Tuesday    [X] Wednesday    [X] Thursday    [X] Friday    [X] Saturday

Dated this _Seventh_ day of _August_, 20_12_.

Landlord/Agent _Mark Rico_

EXHIBIT 

## VERIFICATION

I, the undersigned, say:

That I am the attorney for the Plaintiff in this action; the Plaintiff is absent from the County of Los Angeles, California, where I have my office; or the Plaintiff is otherwise unable to verify this pleading as of the date set forth hereinbelow; and I make this verification for and on behalf of the party for that reason. I have read the attached Complaint for Unlawful Detainer and know its contents. I am informed and believe, and on that ground allege, that the matters stated in it are true.

Executed on _____ August 14, 2012 _____, at Los Angeles, California. I declare under penalty of perjury that the foregoing is true and correct.

KIMBALL, TIREY & ST. JOHN
Attorneys for Plaintiff

JESSICA S. WEIGM...
Bar # 254707

**F 4001-1M.UD**

| In re                    (SHORT TITLE) | CHAPTER:  7 |
|---|---|
| Robert J. Cipriani aka R.J. Cipriani | |
| Debtor(s). | CASE NO.:  2:12-bk-44758-TD |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

555 S. Flower Street, #3400, Los Angeles, CA  90071

A true and correct copy of the foregoing document described as <u>NOTICE OF MOTION AND MOTION FOR RELIEF</u>
<u>FROM THE AUTOMATIC STAY OR FOR ORDER</u>
<u>CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY</u>                will be served or was served **(a)** on the judge
in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General
Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to
the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary
proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at
the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On _10/31/12_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States
Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes
a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity
served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s)
and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission
and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later
than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| _10/31/12_____ | _Brenda Eiden_____ | _Brenda Eiden_ (signature) |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*December 2009*                                                                 **F 4001-1M.UD**

| In re:  Robert J. Cipriani aka R.J. Cipriani | CHAPTER: 7 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:12-bk-44758-TD |

## ADDITIONAL SERVICE INFORMATION (if needed):

DEBTOR:

Robert J. Cipriani aka R.J. Cipriani  (via overnight mail, Federal Express)
1221 Ocean Avenue, #408
Santa Monica, CA  90401


ATTORNEY FOR DEBTOR:

David S. Hagen   (via overnight mail, Federal Express)
16830 Ventura Blvd., #500
Encino, CA  91436-1795


CHAPTER 7 TRUSTEE:

Wesley H. Avery   (via overnight mail, Federal Express)
28005 Smyth Drive, #117
Valencia, CA  91355


U.S. TRUSTEE:

United States Trustee  (via U.S. Mail)
725 S. Figueroa Street, 26th Floor
Los Angeles, CA  90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

1   Agop G. Arakelian, SBN 186467
    Kimball, Tirey & St. John LLP
2   555 S. Flower Street, Suite 3400
    Los Angeles, CA  90071
3
    213-337-0050
4   213-337-0080 (fax)

5   Attorneys for Movant

6

7

8

9                       UNITED STATES BANKRUPTCY COURT

10                       CENTRAL DISTRICT OF CALIFORNIA

11

12  In re:  ROBERT J. CIPRIANI aka R.J.      )   Case No.:   2:12-bk-44758-TD
    CIPRIANI                                 )
13                                           )   Chapter:    7
                                             )
14  _____ )   DECLARATION RE: TELEPHONIC NOTICE
                                             )   OF MOTION FOR RELIEF FROM THE
15  IRVINE APARTMENT COMMUNITIES, L.P.       )   AUTOMATIC STAY
                                             )
16                             Movant,       )
                                             )
17        Vs.                                )   Date:  November 14, 2012
                                             )   Time:  10:00 a.m.
18                                           )   Crtrm:  1345
                                             )
19  ROBERT J. CIPRIANI aka R.J. CIPRIANI     )
                                             )
20                                           )
    Debtor(s)/Respondent(s)                  )
21  _____

22

23        I, BRENDA EIDEN, declare:

24        1.      I am a secretary at KIMBALL, TIREY & ST. JOHN, LLP, attorneys for Movant,

25  located at 555 S. Flower Street, Suite #3400, Los Angeles, California.

26        2.      On October 31, 2012, I notified Debtor's attorney, David S. Hagen, via telephone

27  of the Hearing on Relief from Automatic Stay as described above.

28  / /

3.      On October 31, 2012, at 1:03 p.m., I called Debtor's attorney, David S. Hagen, at 818-990-4416.  The telephone was answered by a voicemail greeting.  I proceeded to leave a message for Mr. Hagen advising him that the hearing of Movant's Motion for Relief from Automatic Stay is set for November 14, 2012, at 10:00 a.m., in Courtroom 1345, at the bankruptcy court located at 255 East Temple Street, Los Angeles, California.

On October 31, 2012, at 1:05 p.m., I attempted to call Debtor Robert J. Cipriani aka R.J. Cipriani at telephone number 310-899-4433, which was a telephone number provided by Movant.  When I called this number an operator informed me this number was no longer in service.  There is no telephone number for Debtor indicated on any documents in our office file.  I further "Googled" Debtor's name and looked the name up on the internet White Pages.  I was unable to find a telephone number for Debtor.

On October 31, 2012, at 1:10 p.m., I telephoned the Chapter 7 Trustee, Wesley H. Avery at 661-295-4674 and left a voicemail advising them that that the hearing of Movant's Motion for Relief from Automatic Stay is set for November 14, 2012, at 10:00 a.m., in Courtroom 1345, at the bankruptcy court located at 255 East Temple Street, Los Angeles, California.


I declare under penalty of perjury under the laws of the United States and State of California that the foregoing is true and correct.

Dated:   October 31, 2012

BRENDA EIDEN